FILED
2011 Sep-06 PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **KEITH D. KILGO,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:10-CV-1922-RDP |
| **MICHAEL J. ASTRUE, Commissioner** of Social Security, | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Keith D. Kilgo brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking judicial review of the decision by the Commissioner of the Social Security Administration ("Commissioner") which denied his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's application for Title II Social Security DIB and Title XVI SSI dated May 8, 2006, alleging disability beginning March 27, 2001, which was subsequently amended to April 10, 2006[1]. (Tr. 42). Plaintiff's application was denied by the Social Security Administration initially and upon review on October 26, 2006. (Tr. 72-78). Plaintiff requested a hearing before an administrative

---

[1] Plaintiff was incarcerated in 2002 for four years on a firearms charge (Tr. 39), and was released from prison on April 10, 2006. (Tr. 42). His request to amend his onset date to the date of his release was granted. (Tr. 39, 42.)

law judge ("ALJ"). (Tr. 81). On November 7, 2006, the request was granted and a hearing was held in Gadsden, Alabama on July 22, 2008. (Tr. 81, 19-26). At the time of the hearing, Plaintiff was 52 years old (Tr. 19, 91). He is a high school graduate with two years of college education and has past relevant work history as a sewing machine repairman and wastewater treatment operator (Tr. 25, 34-36, 115-21, 129-30). Plaintiff alleges that in 2001, he suffered a severe stroke and only regained limited use of his limbs. (Tr. 37).

Plaintiff alleges that he suffers from porphyria, which leaves him fatigued and weak. (Tr. 47). He said that he also has sleep apnea, back pain, shortness of breath and diabetes. (Tr. 46-55, 457-73). He stated in the hearing that he has to lie down frequently during the day and must change positions frequently. (Tr. 57-58).

Records indicate that Plaintiff was diagnosed with mild sleep apnea in March 1998. (Tr. 172-80). On March 28, 2001, Plaintiff suffered a stroke and was admitted to the hospital with right sided weakness. (Tr. 181). He was treated and released on April 3, 2001 with a diagnosis of Cerebral Vascular Accident (CVA) with right hemiparesis secondary to uncontrolled hypertension, diabetes with poor control and recurrent renal stones. (Tr. 181-83). Progress notes from his treating physician, Dr. Pamela Quinn, through December 2001 revealed that Plaintiff had recovered his strength from his stroke, his blood pressure was under good control and his major muscle strength in both upper and lower extremities was normal. (Tr. 201-03). Additionally, his gait and station were normal as was his orientation, speech, memory and ability to maintain attention and concentration. (Tr. 201-203). In February 2002, Plaintiff was hospitalized for renal stones and underwent a stent placement. (Tr. 204-10).

Records from the Marshall Medical Center reflect that Plaintiff was treated for headaches with visual disturbances, kidney stones, low back pain and diabetes. (Tr. 230-47). Records from the

Highlands Medical Center and Dr. Darryl Britt reflect that Plaintiff was treated through 2002 for kidney stones. (Tr. 248-55, 256-59). From 2002 to 2005, doctors at the Federal Correctional Institute treated Plaintiff for hypertension, kidney stones, back pain, headaches and diabetes. (Tr. 260-354).

Records also reflect that from 2001 to January 2008, Dr. Robert Hargraves treated Plaintiff for his CVA, and continued to treat Plaintiff for mild residual right-sided weakness resulting from the stroke, diabetes mellitus, kidney stones, low back pain with no radicular component noted, and headaches. (Tr. 358-402, 447-57, 459-73, 487-97).

In a work requirements statement completed in May 2006, Dr. Hargraves indicated that Plaintiff was not mentally or physically able to work. (Tr. 356). However, in a progress note dated July 13, 2006, Dr. Hargraves reported that Plaintiff was well developed and in no acute distress. (Tr. 399). He also reported Plaintiff's diabetes was improving, his hypertension was well controlled, and he had only mild residual weakness from his CVA. (Tr. 399). Dr. Hargraves did note that Plaintiff reported that his memory skills and motor skills appeared worse. (Tr. 399).

In a consultative examination performed September 8, 2006, Dr. J.M. Roberts found that Plaintiff's blood pressure was 132/88, he was alert and oriented times three, and his range of motion in all extremity joints was normal -- without pain, tenderness, muscle spasm, edema, crepitus or deformity. (Tr. 410-11). Dr. Roberts' diagnosis was status post CVA with minimal residual weakness but apparent memory impairment, cervical degenerative disc disease, mild hearing impairment, non-insulin dependent diabetes mellitus, and by history, sleep apnea, prophyria, recurrent kidney stones, and GERD. (Tr. 411).

On June 18, 2008, Dr. Gregory Carter treated Plaintiff for kidney stones and low back pain secondary to kidney problems, but the examination was unremarkable. (Tr. 477). Dr. Carter also

noted that Plaintiff was well-developed, well-nourished, in no acute distress or apparent discomfort, and alert and fully oriented. (Tr. 477).

In a consultative psychological evaluation in October 2006, Dr. William D. McDonald found that Plaintiff was friendly, cooperative and appropriately dressed, and groomed with speech normal in content, form, and progression. (Tr. 423). He described Plaintiff's mood as happy and content and his remote memory was intact. (Tr. 423-25). Dr. McDonald opined that Plaintiff was capable of understanding, remembering and carrying out instructions, and was quite capable of interacting appropriately with coworkers, supervisors, and the general public. Notably, Dr. McDonald indicated that the Plaintiff was trying to establish some type of in-home business opportunity and he felt that Plaintiff was capable of taking care of his own financial affairs. (Tr. 425).

Plaintiff appeared in person at the hearing in Gadsden, Alabama, on July 22, 2008. (Tr. 19). He was represented by counsel and Susan Heape, an impartial vocational expert, also appeared at the hearing. (Tr. 19). In the ALJ's decision dated October 15, 2008, he determined that, although Plaintiff is unable to perform his past relevant work, he has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 26). Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and thus not eligible for DIB or SSI. (Tr. 26). On May 21, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. 42 U.S.C. § 405(g).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical

or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled. If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform any past relevant work, then the analysis proceeds to the fifth and final step. In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

    In this case, the ALJ determined that Plaintiff: (1) did not engage in substantial gainful activity since the onset of his alleged disability on April 10, 2006 (Tr. 21); (2) does have medically

determinable impairments – namely, late effects of CVA, the combination of which produced more than minimal functional limitations that have lasted at least twelve months (Tr. 21); but that (3) Plaintiff does not have an impairment or combination of impairments as listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). After careful consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform light works as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (except with the need for a sit/stand work option; only occasional bending, stooping and/or crawling, and with no work on ladders/scaffolds). (Tr. 21-22). Based on the testimony of the vocational expert the ALJ, found that the Plaintiff was unable to perform any past relevant work. (Tr. 24-25). However, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25). The ALJ concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of DIB or SSI. (Tr. 25).

### III.     Plaintiff's Argument

Plaintiff presents two arguments for reversing the decision of the ALJ. First, Plaintiff contends that the ALJ failed to properly articulate good cause for according less weight to the opinion of his treating physician when finding that he was not disabled. (Pl.'s Mem. 6). Second, Plaintiff asserts that the ALJ did not properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit's Pain Standard because the ALJ did not articulate his reasons for failing to credit Plaintiff's pain testimony. (Pl.'s Mem. 9). Specifically, Plaintiff maintains that "the ALJ's finding is irrational and is not supported by the actual evidence which contains [his] longitudinal history of treatment for his alleged disabling impairments," (Pl.'s Mem. 10) and "the ALJ did not properly consider the combined effects of [his] multiple impairments." (Pl.'s Mem. 12).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.    Discussion

    A.    **The ALJ Did Not Fail to Articulate Good Cause for Discounting the Opinions of Plaintiff's Treating Physician, Dr. Hargraves.**

Plaintiff first argues that the Commissioner's decision should be reversed because the ALJ failed to properly articulate good cause for discounting the opinion of Dr. Hargraves that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. 6). Plaintiff argues that "the commissioner cannot discount the treating physician's opinion absent a showing of good cause to the contrary." (Pl.'s Mem. 6) (citing *Lamb v. Bowen,* 847 F.2d 698, 703). Additionally, "if the ALJ decides to discount the opinion, he must clearly articulate his reasons for doing so." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

Plaintiff contends that the ALJ did not articulate his reasons for discounting his treating physician's opinion that he is unable to work. This argument misses the mark, however, because the record clearly indicates that the ALJ did consider (and moreover did not completely discount) the opinion of Dr. Hargraves. The ALJ sufficiently considered Dr. Hargraves' opinion that Plaintiff is unable to work, but that opinion is simply inconsistent with Dr. Hargraves' own treatment records and the records of Plaintiff's other physicians. Opinions offered by any medical source on issues such as whether an individual is disabled must be evaluated in light of the applicable factors in 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d), including the degree to which the opinion is consistent with and supported by the record when viewed as a whole. Furthermore, while "the Commissioner must accord the opinions of the treating physician substantial or considerable weight," *Lamb,* 847 F.2d at 703 (11th Cir. 1988), "a treating physician's opinion will be given controlling weight *if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record.*" *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (emphasis

added). Ultimately, the "determination of residual functional capacity is within the authority of the ALJ." *Beech v. Apfel*, 100 F.Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546); *Lewis v. Callahan*, 125 F.3d at 1440). This responsibility is vested in the ALJ because the determination of RFC requires considering not only medical evidence, but "all of the relevant evidence of a claimant's remaining ability to do work despite h[is] impairments." *Beech*, 100 F.Supp.2d at 1330. Therefore, the ALJ is not required to blindly adopt the conclusions of a medical expert.

The ALJ clearly noted and considered Dr. Hargraves' opinion recorded in a work requirements statement completed May 2006 that "the claimant was not mentally or physically able to work due to his altered mental status." (Tr. 23, 356). Additionally, the ALJ noted another one of Dr. Hargraves' opinions that was unfavorable -- that "the claimant reported that his memory skills and motor skills were worse." (Tr. 24). However, the ALJ noted that Dr. Hargraves provided an opinion that ran directly counter to his position that Plaintiff was unable to work. In a progress note dated July 13, 2006, Dr. Hargraves indicated that "the claimant was well developed and in no acute distress" and that "his diabetes was improving and his hypertension was well-controlled." (Tr. 23). As Plaintiff points out, it is true that Dr. Hargraves continually opined in subsequent visits through 2008 that "the claimant is unable to work due to his multiple disabling problems." (Tr. 460, 466, 469, 472, 491). However, in connection with the very same visits, Dr. Hargraves also continually noted that Plaintiff "is well developed and in no acute distress." (Tr. 460, 466, 469, 472, 491). Additionally, the record indicates that Dr. Hargraves observed that the residual effects of Plaintiff's CVA were "mild." (Tr. 397, 399, 449-50, 460, 466, 469, 472, 491, 496). And while the record is rife with Plaintiff's complaints of neck, back, and knee pain, the record does not provide any objective

evidence substantiating these complaints. As the ALJ noted, Plaintiff did not undergo any surgery for these alleged ailments and no surgery was recommended. (Tr. 24, 397, 449, 457, 460, 466).

Notably, the ALJ indicated that he gave significant weight to the reviewing sources at the Disability Determination Service, who disagreed with Dr. Hargraves' opinion that Plaintiff cannot work due to multiple disabling symptoms as "not fully supported by the evidence on file and is given no weight." (Tr. 24, 428).

Furthermore, Dr. Hargraves' opinion that Plaintiff was unable to work is not only inconsistent with his own treatment records, but is also inconsistent with the records of Plaintiff's other treating physicians: Dr. J.N. Roberts, Dr. Gregory Carter, and Dr. William D. McDonald. Treatment records from these physicians provide substantial evidence that Plaintiff is physically and mentally capable of working.

As the ALJ further noted, Dr. Roberts determined in a September 8, 2006 evaluation that Plaintiff's cervical range of motion was only slightly decreased, and that Plaintiff had normal ranges of motion in his extremity joints, which were without pain, tenderness, muscle spasm or deformity. (Tr. 23, 409-10). While Plaintiff's right hand's manual dexterity was poor, his grip strength was only slightly reduced and his left-hand grip was normal. (Tr. 23, 410). Plaintiff walked with an erratic gait and used a cane for balance; however, Dr. Roberts diagnosed Plaintiff as suffering a stroke with only minimal residual weakness, as well as cervical degenerative disease, mild hearing impairment, non-insulin dependent diabetes mellitus and sleep apnea, gastroesophageal reflux disease, recurrent kidney stones, and porphyria. (Tr. 23, 410-11) (emphasis added). The ALJ further observed that Dr. Carter examined Plaintiff in June 2008 for kidney stones and low back pain secondary to kidney problems, but found the examination to be "unremarkable" and noted that Plaintiff "was well-developed, well nourished and in no acute distress or apparent discomfort." (Tr. 23, 477-80).

The ALJ acknowledged that Dr. McDonald found Plaintiff to be "friendly, cooperative and appropriately dressed and groomed" in a consultative psychological evaluation performed October 20, 2006. Dr. McDonald found that Plaintiff's speech was "normal" and his "remote memory was intact." (Tr. 23, 424-25). And while Dr. McDonald did diagnose Plaintiff with mild neurocognitive disorder associated with stroke, it was Dr. McDonald's opinion that Plaintiff was capable of understanding, remembering and carrying out instructions and also quite capable of interacting appropriately with coworkers, supervisors and the general public. (Tr. 23, 424-25) (emphasis added). Notably, Plaintiff was trying to establish an in-home business opportunity at that time, record evidence that is entirely inconsistent with Dr. Hargraves' opinion that Plaintiff is unable to work. (Tr. 23, 425).

Dr. Hargraves' opinion that Plaintiff was unable to work was not dispositive and does not deserve to be given substantial weight because it is wholly inconsistent with statements in his own treatment records and the record as a whole. At the hearing, the ALJ was presented with a conflict in the evidence. On the one hand, Plaintiff proffered the opinions of Dr. Hargraves and, on the other, there was also substantial evidence from other physicians which contradicted Dr. Hargraves. The ALJ did not ignore either of Dr. Hargraves' opinions. He considered both opinions and adopted the one that was most consistent with Dr. Hargraves' own records and the record as a whole - that Plaintiff is "well developed and in no acute distress" and, therefore, not disabled.

Furthermore, even if the ALJ had completely discounted Dr. Hargraves' opinion that Plaintiff is disabled, there is good cause for that conclusion. The Eleventh Circuit has taught us that "good cause" exists when: 1) the treating physician's opinion was not bolstered by the evidence; 2) evidence supported a contrary finding; or 3) the treating physician's opinion was conclusory or

inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). Dr. Hargraves' opinion that Plaintiff is unable to work is consistent with this analysis.

Finally, Plaintiff argues that the ALJ failed to "clearly articulate" the weight given to the opinion of Dr. Hargraves as required under *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (holding that "the ALJ must make clear the weight accorded to each type of evidence and the reasons for the decision so that the reviewing court may determine whether the decision is based on substantial evidence."). The court is doubtful of the merits of this argument. But even if the ALJ failed in this fashion that would be no more than harmless error. Here, it is possible for the reviewing court to determine whether the ultimate decision is supported by substantial evidence - and to be crystal clear, it is.

  **B.** **The ALJ Properly Assessed the Credibility of Plaintiff's Complaints of Pain and His Findings Were Consistent with the Eleventh Circuit's Pain Standard.**

Plaintiff maintains that the ALJ's finding that Plaintiff is not disabled and capable of performing light work is "irrational and is not supported by the actual evidence which contains the Plaintiff's longitudinal history of treatment for his alleged disabling impairments." (Pl.'s Mem.10). Plaintiff cites *Hale v. Bowen*, and argues that "if the ALJ either fails to articulate reasons for refusing to credit the Plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the Plaintiff must be accepted as true." 831 F.2d 1007, 1012 (11th Cir. 1987) (Pl.'s Mem. 9).

The proper standard to be applied in this Circuit when evaluating complaints of disabling pain is set forth in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: "(1) evidence of an underlying medical condition and either (2) objective

medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id*.

Once a claimant shows an underlying impairment that could reasonably produce his symptoms, the ALJ must evaluate the symptoms' intensity, persistence, and limiting effects and determine the extent of impairment. *See* 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ evaluates a claimant's statements in relation to the other evidence, such as his treatment records. *See* § 404.1529(c)(3)-(4). After considering a claimant's subjective complaints, the ALJ may find them not to be credible. *See Marbury v. Sullivan*, 957 F.2d. 837, 839 (11th Cir. 1992).

Here, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment." (Tr. 22). The ALJ did not err in determining that Plaintiff's symptoms are not so debilitating as to preclude work. Indeed, the ALJ articulated his reason for failing to credit Plaintiff's pain testimony when he stated "the[] symptoms are not credible to the extent they are *inconsistent* with the residual functional capacity assessment." (Tr. 22). As explained below, the ALJ's findings are supported by substantial evidence and Plaintiff's arguments to the contrary are simply off the mark.

Plaintiff first argues that the ALJ's finding ignores the treatment records from Dr. Hargraves which (Plaintiff contends) support his testimony that his pain is too disabling to work. (Pl.'s Mem. 10). As Plaintiff points out, Dr. Hargraves continually opined that "[Plaintiff] would probably not be able to work because of his multiple disabling impairments." (Tr. 356, 460, 466, 469, 491). However, as noted above, Dr. Hargraves also continually observed in the very same visits that

13

"[Plaintiff] is well developed and in no acute distress." (Tr. 356, 460, 466, 469, 491). To be sure, there is evidence in the record that Plaintiff complained of numerous impairments, including malaise, fatigue, dyspnea chronic abdominal pain, diabetes, hypertension, history of CVA, chronic back pain, left knee pain, recurrent renal stones, and persistent neck pain/headaches probably secondary to degenerative disc disease. (Pl.'s Mem. 11). However, these complaints are not substantiated by the record evidence, including the medical evidence. Repeated examinations found no evidence to support Plaintiff's allegations of pain or severe right-sided weakness. (Tr. 24). Plaintiff has not had any surgery for his alleged back and neck pain nor has any been recommended to him. (Tr. 24, 397, 449, 457, 460, 466). Indeed, the ALJ's finding that Plaintiff's back pain is secondary to recurrent kidney stones (Tr. 24) is supported by the record.  For example, Dr. Carter examined Plaintiff in June 2008 for kidney stones and low back pain secondary to kidney problems, but found the examination to be "unremarkable." (Tr. 23). Dr. Hargraves himself noted that the residual effects of Plaintiff's CVA were mild (Tr. 397, 399, 449-50, 460, 466, 472, 496), and his hypertension and reflux were well-controlled (Tr. 397, 399, 449-50, 460, 466, 469, 472, 490-91, 496).  Thus the ALJ considered but had good cause for rejecting Dr. Hargraves' opinion.  (Tr. 23).

Plaintiff also asserts that Rule 201.14 of the Medical-Vocational Guidelines supports a finding of disability in this case. (Pl.'s Mem. 11-12); 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.14. To the contrary, that rule applies where a claimant with Plaintiff's vocation factors is limited to sedentary work. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 201.14. Here, Plaintiff has the RFC to perform a reduced range of "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the need for a sit/stand work option; only occasional bending, stooping and/or crawling, and with no work on ladders/scaffolds." (Tr. 21-22). Moreover, because Plaintiff has non-exertional limitations (needing a sit/stand option and only occasional bending, stooping and/or crawling and

14

no work on ladders/scaffolds), the grids cannot be applied to direct any finding in this case. In *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985), this court held that exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills. (Emphasis added). Therefore, it was proper in this case for the ALJ to not exclusively rely on the Guidelines.

The Vocational Expert testified that the subjective limitations outlined by Plaintiff in his testimony would preclude work. (Pl.'s Mem. 7) (Tr. 65-66). However, that determination was made "assum[ing] that the medical evidence would support [Plaintiff's] description" of his pain. (Tr. 65). For the reasons noted above, the record does not provide substantial evidence in support of Plaintiff's subjective complaints of pain. Furthermore, the Vocational Expert testified that, given Plaintiff's age, education, work experience, and RFC, there are over 50,000 jobs in the state of Alabama that Plaintiff could perform such as ticket taker/seller, dressing room checker, assembler, hand packager at the light level of physical exertion, message taker or order taker at the sedentary level of physical exertion (Tr. 25, 62-64).

Finally, Plaintiff argues that the ALJ did not properly consider the combined effects of Plaintiff's multiple impairments, but this argument is without merit. The ALJ must consider the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). It is the duty of the ALJ to make specific and well-articulated findings as to the effect of a claimant's combination of impairments and to decide whether the combined impairments cause the claimant to be disabled. *Id.* A review of the ALJ's decision reveals that he properly considered Plaintiff's impairments as a whole in evaluating the evidence discussed above, as there are numerous instances where the ALJ indicated that he considered the combination of Plaintiff's

impairments. (Tr. 21-24). As the ALJ found, all of the symptoms Plaintiff complained of while he was testifying and also those substantiated my medical evidence. (Tr. 21-24). The ALJ expressly found that "the combination of the claimant's impairments produced more than minimal functional limitations that have lasted at least twelve months." (Tr. 21). Furthermore, the ALJ concluded that Plaintiff did not have "an impairment or combination of impairments" that met or medically equaled a listed impairment. (Tr. 21). Furthermore, in determining Plaintiff's RFC, the ALJ indicated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 22). Because the ALJ found that Plaintiff had one severe impairment (late effects of CVA) does not mean that the ALJ did not consider Plaintiff's other alleged impairments. In *Wheeler v. Heckler*, 784 F.2d 1073, 1077 (11th Cir. 1986), the Eleventh Circuit held that the ALJ's statement that he considered a claimant's impairments in combination was sufficient to show that the combined effect of the claimant's impairments had been considered. *See also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Thus, the ALJ's decision in this case reflects that he properly considered the combined effect of Plaintiff's impairments.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this \_\_\_\_6th\_\_\_\_ day of September, 2011.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE